[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2010
JOHN LEY
CLERK

No. 10-10880
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cv-00209-SPM-AK

TIMOTHY MICHAEL PALETTI,
MARK C. PALETTI,

Plaintiffs-Appellants,

versus

YELLOW JACKET MARINA, INC.,
RICHARD E. CORBIN,
Individually and as Trustee of Richard
Corbin Trust and Corbin Trusts,
JOHN A. BARLEY,
Individually,
EDWARD FRANCIS,
CATHERINE FRANCIS,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 31, 2010)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Timothy Paletti pro se appeals the district court's order denying his request for a declaratory judgment and dismissing his complaint against Defendants Yellow Jacket Marina, Inc., Richard E. Corbin, John A. Barley, and Catherine, Edward and Jason Francis.[1]  After review, we affirm.

## I.  BACKGROUND

### A.    Breach of Contract Litigation in State Court

Paletti's claims arise out of: (1) a 1990 real estate contract in which Paletti and his brother Mark Paletti agreed to purchase a marina in Dixie County, Florida from Yellow Jacket Marina and Richard E. Corbin, and (2) the subsequent state court litigation between the contracting parties in Florida's Third Judicial Circuit Court in Dixie County ("the breach of contract action").  John A. Barley was the attorney for Yellow Jacket Marina and Corbin in the state court litigation.

---

[1]Although both Timothy and Mark Paletti were plaintiffs in the district court, only Timothy Paletti filed a notice of appeal.  Mark Paletti did not sign the notice of appeal and has not otherwise made any intent to appeal known.  Accordingly, to the extent Timothy Paletti attempts to bring this appeal on behalf of his brother, Mark Paletti is not a party to this appeal. See Theriault v. Silber, 579 F.2d 302, 302 n.1 (5th Cir. 1978) (explaining that a pro se party's notice of appeal "is effective only for himself").  When we refer to Paletti, we mean Timothy Paletti.

2

The state court proceedings were protracted and involved a bench trial, multiple judgments and several state court appeals. In 1996, after a bench trial, then-plaintiffs Yellow Jacket Marina and Corbin obtained a judgment in their favor ("the 1996 final judgment"). This verdict was overturned on appeal in 1999. See Paletti v. Corbin, 742 So.2d 343 (Fla. Dist. Ct. App. 1999). Finally, after a July 2001 jury trial on the remaining claims, the state court entered an October 2002 final judgment of $683,917 in damages for breach of contract against the Palettis and in favor of Yellow Jacket Marina and Corbin ("the October 2002 final judgment"). The Florida First District Court of Appeal affirmed the judgment in September 2004. See Paletti v. Corbin, 894 So. 2d 249 (Fla. Dist. Ct. App. 2004).

**B. The Palettis' Wrongful Execution Litigation in State Court**

Between 1996 and 1999, while the 1996 final judgment was on appeal, county sheriffs began conducting execution sales of real property owned (at least in part) by the Palettis in several Florida counties, including Pinellas, Alachua and Gilchrist counties. The Palettis challenged these execution sales in the underlying state court breach of contact action, alleging counter-claims of wrongful execution and seeking declaratory relief and cancellation and recision of the sheriffs' sales. The Palettis' counterclaims named Yellow Jacket Marina, John Barley and John A. Barley & Associates, P.A. as counter-defendants and third- party defendants.

3

Catherine, Edward and Jason Francis ("the Francises") were the current owners of one of the properties sold. First American Title Insurance Company had issued a title insurance policy in favor of the Francises. Because the Palettis' state court claims clouded their title, the Francises filed a claim under the policy. First American Title Insurance Company retained counsel to represent the Francises. Thereafter, the Francises intervened in the state court action.

On May 3, 2006, the state court granted third-party defendant Barley's motion for summary judgment on the Palettis' wrongful execution claims. The state court concluded, <u>inter alia</u>, that because the October 2002 final judgment had been entered and affirmed on appeal, the doctrines of law of the case and res judicata barred the Palettis from challenging the executions and any claim for recision, cancellation or declaratory relief was moot. The state court entered final judgment in favor of Yellow Jacket Marina, Barley and Barley's law firm.[2] On April 25, 2008, the First District Court of Appeal dismissed the Palettis' appeal,

---

[2]A schedule attached to the state court's final judgment listed the four Sheriff's deeds and one Sheriff's sale at issue: (1) Sheriff's deed by the Alachua County Sheriff dated October 21, 1998, signed October 27, 1998 and recorded in OR Book 2198 Page 1897 on October 28, 1998; (2) Sheriff's deed by the Gilchrist County Sheriff dated October 28, 1998, signed November 30, 1998 and recorded in OR Book 278 Page 626 on December 1, 1998; (3) Sheriff's deed by the Alachua County Sheriff dated October 21, 1998, signed October 27, 1998 and recorded in OR Book 2198 Page 1895 on October 28, 1998; (4) Sheriff's deed by the Gilchrist County Sheriff dated March 9, 1999 and recorded in OR Book 283 Page 480 on March 17, 1999; and (5) October 20, 1998 Sheriff's sale of interests in the Palettis in property at 1431 22nd Avenue North, St. Petersburg, Pinellas County, Florida.

ending the Palettis' challenge to the executions. <u>Paletti v. Yellow Jacket Marina, Inc.</u>, 980 So. 2d 494 (Fla. Dist. Ct. App. 2008).

## C.    Timothy Paletti's Bankruptcy

Meanwhile, on October 27, 2006, Timothy Paletti filed a voluntary petition for Chapter 7 bankruptcy. On February 2, 2007, defendant Barley filed a complaint objecting to the discharge of the October 2002 judgment debt, arguing that it was nondischargable under 11 U.S.C. § 523(a)(2)(A). After an October 4, 2007 hearing, the bankruptcy court granted Paletti's motion to dismiss the adversary action. On January 23, 2008, the bankruptcy court discharged Paletti's debt for the breach of contract damages awarded to Yellow Jacket Marina and Corbin. Apparently, Paletti had previously filed for bankruptcy in 1996, but the Palettis' district court pleadings provide little information about this earlier bankruptcy.

## D.    Federal Court Action

On September 30, 2008, the Palettis, proceeding <u>pro se</u>, filed their initial pleading in the U.S. District Court for the Northern District of Florida, entitled "Notice of Appeal," which purported to appeal several orders from the Florida First District Court of Appeal relating to the Dixie County breach of contract action. A magistrate judge directed the Palettis to file an amended complaint,

warning them that the federal courts do not act as an appeals court for state court decisions.

In response, the Palettis filed an amended complaint against Defendants Yellow Jacket Marina, Inc., Corbin, Barley, the Francises and First American Title Insurance Company. The amended complaint alleged claims under 42 U.S.C. §§ 1983, 1985 and 1986; 18 U.S.C. §§ 241 and 242; 11 U.S.C. § 362; and Florida law.[3]

According to the Palettis' amended complaint, the defendants, among other things: (1) conspired to wrongly execute judgment liens against the Palettis' property, resulting in unlawful foreclosures and sheriffs' sales from 1997 to 1999; (2) conducted armed home invasions of the Palettis' property; (3) transported stolen property across state lines; (4) maliciously engaged in ex parte communications with state court judges; (5) slandered titles to their property; (6) filed fraudulent documents; (7) fraudulently transferred real and personal property prior to filing for their own bankruptcy; (8) intervened in bad faith in the state

---

[3]On appeal, Paletti makes no mention of 18 U.S.C. §§ 241 and 242, which are criminal statutes that do not provide a private right of action. Paletti's appeal brief does contain passing references to 11 U.S.C. § 632, but he does not make any substantive argument challenging the dismissal of this particular claim. See Smith v. Sec'y, Dep't of Corrs., 572 F.3d 1327, 1342 n.8 (11th Cir. 2009) ("Failure to offer any argument on an issue in a brief abandons that issue."); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating that passing references to issues in an appeal brief are insufficient to raise a claim on appeal, abandoning the claim). Accordingly, we do not address these claims on appeal.

court litigation; and (9) prepared title insurance policies in bad faith. The Palettis also alleged that between November 2006 and April 2007, defendants Corbin and Barley obtained ex parte orders in Dixie, Gilchrist and Alachua Counties "causing 'unreasonable search and seizure' . . . violating [the] Constitutional Homestead of Timothy M Paletti . . . ." The Palettis' amended complaint sought a jury trial "For Damages on Wrongful Executions Conducted Under Color of Law[.]"

The Palettis also filed a "Petition for Declaratory Judgment," citing 28 U.S.C. § 2201, asking for (1) declaratory judgment as to six pieces of real estate owned by the Palettis which they alleged were subject to execution and forced sale in violation of Florida's Homestead Act and the federal stay in bankruptcy,[4] (2) sanctions and the appointment of a federal prosecutor to investigate the criminal accusations against the defendants; and (3) the return of the six properties to their possession. In a reply brief, the Palettis clarified that they sought declaratory judgment regarding (1) the jurisdiction and authority of the federal bankruptcy

---

[4]The Palettis listed: (1) a home at 1431 22nd Avenue North, St. Petersburg, Florida; (2) a home at 750 N.W. 34th Street in Gainesville, Florida in Alachua County, which was subject to execution by the Sheriff on October 28, 1998; (3) a residential/professional townhome at 430 N.E. 1st Avenue in High Springs, Florida in Alachua County, for which Defendant Barley obtained a third alias writ of possession on April 25, 2007; (4) home and land at 8960-8962 N.E. 90th Avenue in High Springs, Florida in Gilchrist County subject to Sheriff's execution in May 1999; (5) land at 8640 N.E. 60th Street, High Springs, Florida in Gilchrist County which was the subject of a Sheriff's deed in October 1998; (6) the marina and restaurant in Dixie County.

court, and (2) "the matters and conflicting orders of the state court rendered to the lower tribunal of records after the automatic federal stay of proceedings . . . ."

The defendants filed motions to dismiss, arguing, among other things, that (1) the Palettis' complaint failed to state a civil rights claim because the defendants were private parties not acting under color of law; and (2) the district court lacked subject matter jurisdiction to review the Florida state courts' judgments.[5]

A magistrate judge issued a report ("R&R") recommending the defendants' motions be granted and that the Palettis' action be dismissed. The R&R determined that the Palettis's amended complaint: (1) did not allege any facts suggesting the defendants acted under color of state law; (2) failed to identify any constitutional right or federal law the defendants violated; and (3) raised "a matter for state court determination, as it concerns a breach of contract related to a real property transaction that has been embroiled in state court for nearly two

_____

[5]Because the Francis defendants attached copies of court records to their motion to dismiss, the magistrate judge issued on order converting the motion to dismiss to a motion for summary judgment and advising the Palettis of their obligation under Federal Rule of Civil Procedure 56 to respond to the summary judgment motion with evidentiary materials. Additionally, defendant First American Title Insurance Company filed a motion for summary judgment, arguing that all of its actions were taken pursuant to contractual obligations and that the Palettis had failed to state a claim against it.

decades." The R&R also concluded that the Palettis' request for declaratory judgment was barred by the Rooker-Feldman doctrine.[6]

Over the Palettis' objection, the district court adopted the R&R, granted the defendant's motions and denied the Palettis' request for declaratory judgment. Timothy Paletti filed this appeal.

## II. DISCUSSION

### A. Dismissal of Declaratory Judgment Request Under Rooker-Feldman Doctrine

"Generally speaking, the Rooker-Feldman doctrine recognizes that federal district courts do not have jurisdiction to act as appellate courts and precludes them from reviewing final state court decisions." Green v. Jefferson Cnty. Comm'n, 563 F.3d 1243, 1249 (11th Cir.), cert. denied, ___ U.S. ___, 130 S. Ct. 199 (2009). The Rooker-Feldman doctrine applies only to cases that are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005); see also Nicholson v. Shafe, 558 F.3d 1266, 1272-74, 1278-79 (11th Cir. 2009). "The

---

[6]After the R&R was issued, the Palettis filed a notice of voluntary dismissal dismissing their § 1983 claims, but reiterating their request for declaratory judgment.

9

doctrine bars the losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Brown v. R.J. Reynolds Tobacco Co., ___ F.3d ___ , No. 08-16158, 2008 WL 2866923, at *4 (11th Cir. July 22, 2010) (quotation marks omitted).[7]

Here, the district court correctly concluded that Paletti's declaratory judgment claim was barred by the Rooker-Feldman doctrine. Based on Paletti's amended complaint and his response to the defendants' motions, by the time Paletti filed this federal action, he was the state-court loser in both the breach of contract action and the wrongful execution action. The protracted state court proceedings ended no later than April 28, 2008, before Paletti filed this federal action on September 30, 2008.

Furthermore, Paletti sought a declaration from the district court, and now this Court, that the state court orders authorizing the execution sale of his properties were void because they violated the federal bankruptcy stay and Florida's homestead exemption. In other words, Paletti's request for declaratory judgment "complain[s] of injuries caused by state-court judgments" and "invit[es]

---

[7]We review de novo a district court's dismissal for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine. Nicholson, 558 F.3d at 1270.

district court review and rejection of those judgments." The <u>Rooker-Feldman</u> doctrine precluded the district court from engaging in such a review. Accordingly, the district court properly dismissed Paletti's declaratory judgment claim for lack of jurisdiction.

**B.      Dismissal of Civil Rights Claims for Failure to State a Claim**

Upon a defendant's motion, the district court may dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).[8] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must . . . contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).[9]

To state a claim under 42 U.S.C. § 1985(3), the plaintiff must allege that two or more people conspired to deprive him of equal protection of the laws or

---

[8]We review <u>de novo</u> a district court dismissal for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. <u>Harris v. United Auto. Ins. Group, Inc.</u>, 579 F.3d 1227, 1230 (11th Cir. 2009). In so doing here, because Paletti is <u>pro se</u>, we construe his pleadings liberally. <u>See Alba v. Montford</u>, 517 F.3d 1249, 1252 (11th Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 632 (2008).

[9]Paletti's argument that the district court is authorized to dismiss a complaint only due to the plaintiff's bad faith or failure to comply is without merit. Additionally, the district court is not required to hold a hearing before dismissing an action for failure to state a claim, pursuant to Rule 12(b)(6), or for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

equal privileges and immunities under the laws.  42 U.S.C. § 1985(3).  To keep § 1985(3) from serving as a "general federal tort law," if the alleged conspirators are private actors, the plaintiff must allege that the conspiracy was aimed at rights constitutionally protected against private impairment.  Cook v. Randolph County, 573 F.3d 1143, 1156 (11th Cir. 2009); Park v. City of Atlanta, 120 F.3d 1157, 1162 (11th Cir. 1997).  Only rights that are "serious constitutional right[s]" are enforceable against private conspirators under § 1985(3).  Cook, 573 F.3d at 1156.  So far, the Supreme Court has identified only two rights -- the rights to interstate travel and against involuntary servitude -- as sufficiently serious to protect against private, as well as public, encroachment.  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278, 113 S. Ct. 753, 764 (1993) (rejecting the right to an abortion as one of the rights protected against private conspiracies by § 1985(3)).

Claims under 42 U.S.C. § 1986 are "derivative of § 1985 violations."  Park, 120 F.3d at 1159-60.  To state a § 1986 claim, the plaintiff must show that the defendant knew of a § 1985 conspiracy and failed to prevent it, despite having the power to do so.  Id. at 1160; see also 42 U.S.C. § 1986.

Paletti failed to state a § 1985(3) conspiracy claim because he did not allege that the defendants, all private actors, conspired to violate the kind of "serious" right, such as the right to interstate travel or the right against involuntary

12

servitude, that is constitutionally protected against private infringement. There is no constitutionally protected right against a private party obtaining a "wrongful execution" of a judgment lien in state court. Because no § 1985(3) conspiracy was alleged, he likewise failed to state a § 1986 claim. Thus, the district court did not err in dismissing Paletti's §§ 1985 and 1986 civil rights conspiracy claims for failure to state a claim.[10]

## III. CONCLUSION

The district court properly dismissed Paletti's request for declaratory relief on <u>Rooker-Feldman</u> grounds and his civil rights conspiracy claims for failure to state a claim. Furthermore, because the district court dismissed all claims over which it had original jurisdiction, it was within its discretion to dismiss Paletti's state law claims. <u>See</u> 28 U.S.C. § 1367(c)(3) (permitting district court to decline to exercise supplemental jurisdiction if all claims over which the court had original jurisdiction are dismissed).

**AFFIRMED.**

---

[10]Paletti voluntarily dismissed his § 1983 claims in the district court.