[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10234
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:07-cv-01345-CAP

WANDA Y. DOCKENS,

Plaintiff-Appellant,

versus

DEKALB COUNTY SCHOOL SYSTEM,

Defendant-Appellee,

DR. CRAWFORD LEWIS, etc., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 28, 2011)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Wanda Dockens appeals pro se the district court's grant of summary judgment on her retaliation claim under the Family Medical Leave Act, 29 U.S.C. § 2610 et seq, and the decision to decline supplemental jurisdiction over her claim under Georgia's Fair Dismissal Act, Ga. Code Ann. § 20-3-940 et seq. Dockens contends that the district court erred when it found she had failed to present either direct or circumstantial evidence of retaliation and that it should have retained supplemental jurisdiction over her state law claim.

I.

Dockens began working for the DeKalb County School System as a media specialist in 1995 and worked at Southwest DeKalb High School beginning in August 2000. In January 2005 Dockens was diagnosed with an anxiety disorder.

On October 6, 2005 Dockens and Horace Dunson, an Assistant Superintendent, had a discussion at the high school that ended with Dunson telling Dockens to turn in her keys and badge, get her purse, and "get off this campus." That led Dockens to believe she had been terminated. On October 10, 2005 Dockens requested medical leave related to her anxiety disorder after learning of the death of a family member. Two days later Dunson emailed Dockens telling her she had not been fired, but would instead be reassigned to another school

2

within the district. Dockens was reassigned to Miller Grove Middle School later that month.

The School System requires employees seeking leave under the FMLA to provide certification from a medical provider that the leave is necessary. When an employee is able to return to work, she must provide a "Fitness-for-Duty Report." The School System sent her a "Family Medical Leave Information Packet[1]." The cover letter of the packet stated that the Fitness-for-Duty Report had to be completed by a medical provider before Dockens could return to work.

The School System had some concerns about the documents Dockens had submitted. On January 5, 2006 Dunson emailed several School System employees, including Dr. Jamie Wilson, then Director of Staff Services, asking that Dockens be terminated for job abandonment and stating that Dockens had yet to submit the required documents for FMLA leave. Replying by email the same day, Wilson said that Dockens had submitted some documents but perhaps not the proper ones, and that Wilson would review the file again. In a follow up email on January 11, Wilson noted that the School System was in contact with Dockens' medical providers, but that he was concerned her documents might be forged. In that

---

[1] Viewing the facts in the light most favorable to Dockens and construing her pro se brief liberally, we will assume she presented medical documentation establishing that FMLA leave was necessary.

3

follow up email, Wilson told Dunson: "If we get conformation [sic] that the documents are forged then we will proceed with termination. In the event the documents are not forged, we will discuss some other options with you."

Also on January 11, 2006 a termination letter was sent to Dockens signed by Wilson. The School System filed with its motion for summary judgment a January 12, 2006 email supposedly sent by Dockens in which she said she had spoken with "Ms. Davis" and had been told the letter was an error. The School System also filed a January 17, 2006 letter from Wilson to Dockens apologizing for the erroneous termination letter. In an affidavit attached to her response to the School System's motion for summary judgment, Dockens denied writing the January 12 email or receiving the January 17 letter, but she produced no evidence to indicate the letter or email were fraudulent.

On January 17, 2006 Dockens' doctor determined her condition had worsened and that she was unable to return to work. In February 2006 Dockens finally provided a doctor's report to the School System stating that she could return to work part-time in May 2006. But she never gave any Fitness-for-Duty Report to the School System, and she never returned to work.

On August 7, 2006 and again on January 3, 2007, Dockens told the School System by email that she was still ill and unable to return to work. On February

4

23, 2007 the School System sent a letter to Dockens stating that she had been placed on FMLA leave from October 7, 2005 to January 17, 2006 and that she had been placed on an extended leave of absence for the remainder of the school year ending June 1, 2006. The letter also noted that she had accepted long-term disability beginning on May 5, 2006. Five days later, the School System informed Dockens that if she received clearance from her doctor to return to work, she could apply for vacant positions.

Dockens, proceeding pro se, filed this lawsuit against the School System and against Dr. Crawford Lewis in his official capacity as Superintendent of the School System. After the district court twice ordered Dockens to file amended complaints—once before a motion to dismiss was filed and once afterwards—the School System filed another motion to dismiss. Both times she filed an amended complaint. Thereafter, a magistrate judge issued a report and recommendation, which the district court adopted, dismissing all her claims except the FMLA interference[2] and retaliation claims and the Georgia state Fair Dismissal Act claim. Dockens and the School System later filed cross-motions for summary judgment on those three remaining claims.

---

[2] Because Dockens does not address the FMLA interference claim on appeal, she has waived that issue and we will not address it. Ivy v. Ford Motor Co., ___ F.3d ___, 2011 WL 2671299, at *2 (11th Cir. July 11, 2011).

The magistrate judge issued a second report recommending the district court grant summary judgment to the School System on both FMLA claims, deny Dockens' motion for summary judgment, and decline to exercise supplemental jurisdiction over Dockens' state law claim. The district court adopted that report without elaboration.

III.

We review de novo a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Employees have a private right of action against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. Id. § 2615(a)(1); Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006). Section 2615(a) "creates [a] retaliation claim[], in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.'" Id. (quoting Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir.2001)).

6

"To prove FMLA retaliation, an employee must show that [her] employer intentionally discriminated against [her] for exercising an FMLA right" by showing that her "employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Martin v. Brevard Cnty. Pub. Sch., 543 F.3d 1261, 1267–68 (11th Cir. 2008) (citations omitted).  Proof can be by either direct or circumstantial evidence.  See Dixon v. Hallmark Cos., Inc., 627 F.3d 849, 854 (11th Cir. 2010); Lee v. Russell Cnty. Bd of Educ., 684 F.2d 769, 773–774 (11th Cir. 1982).

Direct evidence of discrimination "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999)).  It "proves the existence of a fact without inference or presumption." Wilson, 376 F.3d at 1086 (quoting Burrell v. Bd of Trs. Of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997).  "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination."  Dixon, 627 F.3d at 854 (quoting Wilson, 376 F.3d at 1086).  "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence."

7

Akouri v. Fla. Dep't of Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) (citing Wilson, 376 F.3d at 1086).

The evidence Dockens points to does not rise to this level. She argues that the series of emails between Dunson and Wilson from January 6, 2006 and January 11, 2006 and the January 11, 2006 termination letter are direct evidence of retaliation. But nothing in the emails or the letter states that Dockens was fired for taking FMLA leave. While the emails discuss terminating Dockens for missing work while not on approved leave or for forging medical documents, that is not direct evidence of retaliation. The termination letter is not either, because it does not refer to Dockens' FMLA leave at all. See Wilson, 376 F.3d at 1087 (listing examples of direct evidence in discrimination cases). Even if Dockens were terminated on January 11, 2005, that alone would not be direct evidence but instead only circumstantial evidence. See, e.g., Hurlbert, 439 F.3d at 1297–98.

When there is no direct evidence of retaliatory intent, we apply the burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010). Under that framework, to establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment decision, and (3) the decision

8

was causally related to the protected activity." Id.

Once the plaintiff establishes a prima facie case the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the employment decision. Id. This is a burden of production only and not a burden of persuasion. See Wilson, 376 F.3d at 1087 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254–255, 101 S.Ct. 1089, 1094 (1981)).

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to present evidence that the articulated reasons were merely pretext. Schaff, 602 F.3d at 1244. This evidence must be "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Id. The plaintiff must persuade "the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted). Even assuming Dockens can establish a prima facie case for retaliation, she has still failed to rebut the legitimate, non-discriminatory reasons articulated by the School System.

First, the School System produced unrebutted evidence that the January 11 termination letter was a mistake. Second, the School System produced unrebutted

evidence that the reason Dockens was not allowed to return to work was that she was still medically unable to work when her FMLA leave ended. It is also undisputed that Dockens never provided the School System with the required Fitness-for-Duty Report. Those are legitimate, non-discriminatory reasons for the School System's actions. Other than bare assertions, Dockens produced no evidence that those reasons are pretextual. Dockens, therefore, does not "meet the reason head on and rebut it," Chapman, 229 F.3d at 1030, and the School System was properly granted summary judgment.

IV.

In addition to granting summary judgment against Dockens on her FMLA claims, the court declined to exercise supplemental jurisdiction over her Georgia Fair Dismissal Act claim. Dockens urges us to reverse that decision. We review a district court's decision not to exercise supplemental jurisdiction only for an abuse of discretion. Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C., 596 F.3d 1313, 1328 (11th Cir. 2010). A district court may decline supplemental jurisdiction if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). Once the district court properly granted summary judgment for the School System on the FMLA claims, no federal claims remained. It was not abuse of discretion for the court to decline supplemental

10

jurisdiction over the state law claim.

**AFFIRMED**.